**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>$59,000.00 IN UNITED STATES CURRENCY,<br><br>        Defendant. | 3:21-CV-173-HDM-CLB<br><br>**Default Judgment of Forfeiture and Final Judgment of Forfeiture** |

### I.  FACTS

On December 8, 2020, at approximately 3:07 P.M., Anderson was driving a white Chevrolet Malibu, bearing a Florida license plate, on Interstate 80 westbound in Washoe County, Nevada. Nolting, who was seated in the front passenger seat, was the only other occupant of the vehicle.

A WCSO officer observed the Malibu speeding at approximately eighty miles per hour (ten miles per hour above the posted limit) and veering over the white fog line.

The WCSO officer initiated a traffic stop of the Malibu for the following violations of Nevada law: Speeding and Failure to Maintain Lane.

The WCSO officer approached the Malibu and made contact with the occupants, who provided their driver's licenses. The officer requested the vehicle's documentation, and Anderson advised that the Malibu was a rental. Anderson stated that he needed to obtain the rental agreement from his phone, and the officer requested that Anderson exit the vehicle to speak with the officer while searching for the rental agreement.

While Anderson searched his phone for the rental agreement, the WCSO officer advised Anderson of the reason for the stop.

The WCSO officer asked Anderson about his trip. Anderson replied that he was traveling from Topeka, Kansas to San Francisco, California. Anderson added that the purpose of the trip was to see the sequoias and beaches and play frisbee golf. The officer found these vacation plans suspicious, since the San Francisco area was subject to pandemic restrictions at that time, such as curfews and lockdowns.

Anderson produced the rental agreement. It revealed that the vehicle had been rented on December 6, 2020, at 11:53 A.M. in Topeka and was scheduled to be returned on December 16, 2020, at 12:00 P.M. in Topeka. Anderson stated that they had left Topeka on December 7, 2020. The officer estimated that Topeka was approximately 1,500 miles away and that the drive would have taken approximately twenty hours. Anderson would later communicate that they had left Topeka at 9:30 A.M.

The WCSO officer engaged Nolting in conversation. When asked about the trip, Nolting stated that they were coming from Topeka, that the drive was a long one, and that he (Nolting) wanted to fly back rather than drive. Nolting provided no other substantive information about the trip.

The WCSO officer reengaged Anderson and asked whether the Malibu contained any illegal drugs, and Anderson replied in the negative. The officer then asked whether the vehicle contained any large amounts of currency, and Anderson answered that it did not.

Meanwhile, a backup officer had arrived on scene. Nolting exited the vehicle. The backup officer deployed his certified, reliable canine—trained to detect the odor of illegal drugs. The canine alerted to the presence of the odor of illegal drugs coming from the Malibu.

The WCSO officer again asked Anderson whether the vehicle contained illegal drugs or a large amount of currency. Anderson answered in the negative.

Based on the canine alert, investigators performed a probable-cause search of the vehicle.

The search uncovered a suitcase—secured with a combination lock—in the trunk. Anderson provided the combination to a backup officer upon request. Located inside the

suitcase was a large quantity of United States currency. The currency was arranged into numerous rows of neatly folded, rubber-banded bundles, and those bundles were found inside of vacuum-sealed food-preservation bags. The bags had numbers written on them in black ink, presumably related to the values of the currency packed inside. The observable denominations for many of the bundles were $20 bills. Based on the organization and packaging of the currency, investigators suspected that the currency was involved in the illegal-drugs trade.

Also located in the trunk of the Malibu was a large black duffel bag. Within the duffel bag, investigators discovered a "Foodsaver" vacuum-sealing machine for food-preservation bags, a large quantity of unused food-preservation bags, rubber gloves, Clorox wipes, a Sharpie pen, and scissors. Investigators suspected these materials as being used in furtherance of the illegal-drugs trade.

Investigators also discovered numerous items in the Malibu that appeared to be related to the cultivation, evaluation, and consumption of marijuana. These items included:

    a. 3.5 grams of a product labeled "Veritas Grape" with a THC content of "23.91-26.49%";

    b. A handwritten list of items including "4' x 2' Gorilla Grow tent," "Luxx Lighting" lights with a "light controller," "3 Secret Jarden . . . fans," "2 AC Infinity . . . duct fans," "2 AC Infinity Carbon filters," and "Nectar for the Gods soil";

    c. A printed tool from the "Trichome INSTITUTE" called "THE HASH & CONCENTRATE WHEEL" with reference information for "POTENCY – THC %," "CONSISTENCY," AND "COLOR";

    d. Handwritten notes for "Nectar for the Gods (feeding regiment [sic])" detailing steps such as "feed" and "flush," "soil test w/ ph," "light schedule," "humid[ity]" level and timing, and nutrients for additions (such as "calcium");

    e. A printed tool from the "Trichome INSTITUTE" displaying a branded magnifying device, photographs of trichomes, visual descriptors for trichomes,

      and qualitative reference information such as "RIPENESS," "DENSITY," "TRIM," and "AROMA POTENCY";

  f. Detailed handwritten notes on various nutrient sources and/or nutrient-addition techniques, such as "Aphrodites Extraction," "Hygeia's Hydration," "Pegasu Potion," "Persephones Palate," "Medusas magic," and "Herculean Harvest";

  g. A book from the "Trichome INSTITUTE," authored by "Max Montrose," titled "INTERPENING The Art and Science of the Cannabis Sommelier";

  h. Detailed handwritten notes for a cultivation regimen called "nectar for the gods," including entries on "Veg light cycle" and "flower light cycle" with time values, "feed" with a percentage range for "runoff," "harvest" with light types and a temperature range, and "ready for market" with a day range "from harvest";

  i. A printed tool from the "Trichome INSTITUTE" called "The Weed Wheel" with physical and sensory descriptions for different categories of marijuana;

  j. Detailed handwritten notes on temperature and humidity ranges for different phases of plant cultivation;

  k. Detailed handwritten notes on "Environmental influences on plant sex," with cultivation factors related to "More Males" and "More Females"; and

  l. A printed reference work, with cover illustration, for "NECTAR FOR THE GODS GREEK REGIMEN," which included entries on nutrient quantities and timing, the importance of PH ("PH is critical"), soil, and flushing.

Investigators placed the currency along the roadside in the brush. A backup officer deployed his certified, reliable canine—trained to detect the odor of illegal drugs. This canine was a different canine than the one that had been deployed earlier in the vicinity of the Malibu. This canine's handler was a different backup officer than the backup officer who had deployed the other canine in the vicinity of the Malibu. This canine found and alerted to the odor of illegal drugs coming from the currency.

/ / /

The WCSO officer reengaged Anderson in conversation. The conversation entailed the following:

    a. Anderson acknowledged the presence of the currency and stated that the source of the currency was an inheritance from his grandfather, John Buetel.

        i. Earlier, Anderson had twice denied that the Malibu contained any large sums of currency.

    b. Anderson claimed that the money was intended to be used to buy a residence in San Francisco and that he planned to relocate to California.

        i. When asked whether he had a picture of the property he was going to buy or a specific piece of property in mind, he said that he was carrying the money just in case he encountered a property that he liked, such as at a foreclosure sale.

        ii. Earlier, Anderson had only stated that the purpose of his trip was a vacation to play frisbee golf and see the sequoias and beaches.

    c. Anderson said that he lived in Topeka in an apartment and worked for his mother, being paid in cash to take care of property.

    d. Anderson communicated that the currency was packaged as it was to keep it "tight" and "safe," but he could not explain why he had not used a bank or secured monetary instrument, other than stating that he had recently received the money and wanted to spend it quickly and that he did not know how cashier's checks worked.

At the conclusion of the traffic stop, the WCSO seized the currency.

A later official bank count determined that the currency totaled $59,000. The currency was composed of the following denominations:

    a. $29,000 in $20 bills (1,450 bills); and

    b. $30,000 in $100 bills (300 bills).

Currency involved in the illegal-drugs trade is often composed heavily of small denominations, particularly $20 bills.

The $59,000 in United States currency is the entirety of the defendant currency.

## II. PROCEDURE

On April 16, 2021, the United States filed a verified Complaint for Forfeiture in Rem, ECF No. 1, alleging the $59,000 (defendant property):

a. is all moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished in exchange for a controlled substance or listed chemical in violation of Subchapter I of the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, and is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6);

b. is all proceeds traceable to an exchange for a controlled substance or listed chemical in violation of Subchapter I of the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, and is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6);

c. is all moneys, negotiable instruments, and securities used or intended to be used to facilitate violations of Subchapter I of the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, and is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6); and

d. is any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of any offense constituting "specified unlawful activity," here Subchapter I of the Controlled Substances Act, 21 U.S.C. § 801, *et seq.* (incorporated through 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1)(D)), or a conspiracy to commit such offense, and is subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C).

On April 23, 2021, the Court entered an Order for Summons and Warrant of Arrest in Rem for the Property and Notice, ECF No. 3, and the Clerk issued the Summons and Warrant of Arrest in Rem, ECF No. 4.

Pursuant to the Order, ECF No. 3, the following documents were served on the defendant property and all persons or entities who may claim an interest in the defendant

property: the Complaint, ECF No. 1, the Order, ECF No. 3, the Summons and Warrant, ECF No. 4, and the Notice of Complaint for Forfeiture. Notice was published according to law.

Pursuant to Supplemental Rule for Admiralty or Maritime Claims and Asset Forfeiture Actions (Fed. R. Civ. P. Supp. Rule) G(5), all persons interested in the defendant property were required to: (1) file a verified claim, setting forth the person's or its interest in the property, that (a) identified the specific property claimed, (b) identified the claimant and stated the claimant's interest in the property, and (c) was signed by the claimant under penalty of perjury pursuant to 28 U.S.C. § 1746; (2) file the verified claim with the Clerk of the above-entitled Court no later than 35 days after the notice is sent or, if direct notice was not sent, no later than 60 days after the first day of publication on the official internet government forfeiture site, www.forfeiture.gov; (3) file an answer to the Complaint for Forfeiture in Rem or a motion under Rule 12 with the Clerk of the Court, Bruce R. Thompson U.S. Courthouse and Federal Building, 400 South Virginia Street, 3rd Floor, Reno, Nevada 89501, no later than 21 days after filing the verified claim; and (4) serve a copy of the verified claim and the answer at the time of each filing on James A. Blum, Assistant United States Attorney, 501 Las Vegas Boulevard South, Suite 1100, Las Vegas, Nevada 89101. Complaint, ECF No. 1; Order for Summons and Warrant, ECF No. 3; Summons and Warrant, ECF No. 4.

On April 27, 2021, the United States Marshals Service served the Complaint, the Order for Summons and Warrant of Arrest in Rem for the Property and Notice, the Summons and Warrant of Arrest in Rem for the Property, and the Notice of Complaint for Forfeiture and Arrest by executing them on the defendant property. Notice of Filing Take into Custody, ECF No. 5-1, p. 2.

Public notice of the forfeiture action and arrest was given to all persons and entities by publication via the official internet government forfeiture site, www.forfeiture.gov, from April 30, 2021, through May 29, 2021. Notice of Filing Proof of Publication, ECF No. 6-1, p. 5.

7

On May 26, 2021, the United States Attorney's Office served the Complaint, the Order for Summons and Warrant of Arrest in Rem for the Property and Notice, the Summons and Warrant of Arrest in Rem for the Property, and the Notice of Complaint for Forfeiture and Arrest on Ian Hunter Anderson by regular and certified mail. Notice of Filing Service of Process – Mailing, ECF No. 13-1, p. 3, 7-8, 10-24, 26-28, 80.

On May 26, 2021, the United States Attorney's Office served the Complaint, the Order for Summons and Warrant of Arrest in Rem for the Property and Notice, the Summons and Warrant of Arrest in Rem for the Property, and the Notice of Complaint for Forfeiture and Arrest on Ian Hunter Anderson by regular and certified mail. Notice of Filing Service of Process – Mailing, ECF No. 13-1, p. 3, 7-8, 10-24, 29-33.

On May 26, 2021, the United States Attorney's Office served and attempted to serve the Complaint, the Order for Summons and Warrant of Arrest in Rem for the Property and Notice, the Summons and Warrant of Arrest in Rem for the Property, and the Notice of Complaint for Forfeiture and Arrest on Ian Hunter Anderson by regular and certified mail, respectively. The certified mail is still in transit and delivery is unconfirmed as of July 8, 2021. Notice of Filing Service of Process – Mailing, ECF No. 13-1, p. 3, 7-8, 10-24, 34-38.

On May 26, 2021, the United States Attorney's Office served the Complaint, the Order for Summons and Warrant of Arrest in Rem for the Property and Notice, the Summons and Warrant of Arrest in Rem for the Property, and the Notice of Complaint for Forfeiture and Arrest on Lee T. Hotchkin Esq., Counsel for Ian Hunter Anderson, by regular and certified mail. Notice of Filing Service of Process – Mailing, ECF No. 13-1, p. 3, 7-8, 10-24, 39-41, 81.

On May 26, 2021, the United States Attorney's Office served and attempted to serve the Complaint, the Order for Summons and Warrant of Arrest in Rem for the Property and Notice, the Summons and Warrant of Arrest in Rem for the Property, and the Notice of Complaint for Forfeiture and Arrest on Devon Duane Nolting by regular and certified mail, respectively. The certified mail is still in transit and delivery is unconfirmed as of July

/ / /

8, 2021. Notice of Filing Service of Process – Mailing, ECF No. 13-1, p. 3-4, 7-8, 10-24, 42-47.

On May 26, 2021, the United States Attorney's Office served the Complaint, the Order for Summons and Warrant of Arrest in Rem for the Property and Notice, the Summons and Warrant of Arrest in Rem for the Property, and the Notice of Complaint for Forfeiture and Arrest on Devon Duane Nolting by regular and certified mail. Notice of Filing Service of Process – Mailing, ECF No. 13-1, p. 4, 7-8, 10-24, 48-50, 80.

On May 26, 2021, the United States Attorney's Office attempted to serve the Complaint, the Order for Summons and Warrant of Arrest in Rem for the Property and Notice, the Summons and Warrant of Arrest in Rem for the Property, and the Notice of Complaint for Forfeiture and Arrest on Devon Duane Nolting by regular and certified mail, respectively. The regular and certified mail were returned as not deliverable as addressed. Notice of Filing Service of Process – Mailing, ECF No. 13-1, p. 4, 7-8, 10-24, 51-54.

On May 26, 2021, the United States Attorney's Office served the Complaint, the Order for Summons and Warrant of Arrest in Rem for the Property and Notice, the Summons and Warrant of Arrest in Rem for the Property, and the Notice of Complaint for Forfeiture and Arrest on Richard Bull by regular and certified mail. Notice of Filing Service of Process – Mailing, ECF No. 13-1, p. 4, 7-8, 10-24, 55-57, 80.

On May 26, 2021, the United States Attorney's Office served the Complaint, the Order for Summons and Warrant of Arrest in Rem for the Property and Notice, the Summons and Warrant of Arrest in Rem for the Property, and the Notice of Complaint for Forfeiture and Arrest on Richard Bull by regular and certified mail. Notice of Filing Service of Process – Mailing, ECF No. 13-1, p. 4, 7-8, 10-24, 58-62.

On May 26, 2021, the United States Attorney's Office served the Complaint, the Order for Summons and Warrant of Arrest in Rem for the Property and Notice, the Summons and Warrant of Arrest in Rem for the Property, and the Notice of Complaint for

/ / /

Forfeiture and Arrest on Linda Bull by regular and certified mail. Notice of Filing Service of Process – Mailing, ECF No. 13-1, p. 4, 7-8, 10-24, 63-65, 81.

On May 26, 2021, the United States Attorney's Office served the Complaint, the Order for Summons and Warrant of Arrest in Rem for the Property and Notice, the Summons and Warrant of Arrest in Rem for the Property, and the Notice of Complaint for Forfeiture and Arrest on Linda Bull by regular and certified mail. Notice of Filing Service of Process – Mailing, ECF No. 13-1, p. 4, 7-8, 10-24, 66-70.

On May 26, 2021, the United States Attorney's Office served the Complaint, the Order for Summons and Warrant of Arrest in Rem for the Property and Notice, the Summons and Warrant of Arrest in Rem for the Property, and the Notice of Complaint for Forfeiture and Arrest on EAN Holdings Corp./ Enterprise Rental Attn: Corp Security Liz Johnson by regular and certified mail. Notice of Filing Service of Process – Mailing, ECF No. 13-1, p. 5, 7-8, 10-24, 71-76.

On May 26, 2021, the United States Attorney's Office served the Complaint, the Order for Summons and Warrant of Arrest in Rem for the Property and Notice, the Summons and Warrant of Arrest in Rem for the Property, and the Notice of Complaint for Forfeiture and Arrest on EAN Holdings Corp./ Enterprise Rental c/o CT Corporation System by regular and certified mail. Notice of Filing Service of Process – Mailing, ECF No. 13-1, p. 5, 7-8, 10-24, 77-79, 81.

On June 10, 2021, Ian Hunter Anderson filed a Judicial Claim. Claim, ECF No. 7.

On June 10, 2021, Ian Hunter Anderson filed an Answer to the Complaint. Answer, ECF No. 9.

On July 7, 2021, the United States filed a Settlement Agreement for Entry of Judgment of Forfeiture as to Ian Hunter Anderson and Order, regarding the $59,000 in United States Currency. Claimant waived, among other things, service of process. Settlement Agreement, ECF No. 11.

/ / /

/ / /

On July 8, 2021, the Court entered the Order granting the Settlement Agreement for Entry of Judgment of Forfeiture as to Ian Hunter Anderson. Order Granting Settlement Agreement, ECF No. 12.

No person or entity has filed a claim, answer, or responsive pleading within the time permitted by 18 U.S.C. § 983(a)(4) and Fed. R. Civ. P. Supp. Rule G(4) and (5).

On August 24, 2021, the United States filed a Motion for Entry of Clerk's Default against the $59,000 in United States Currency, Devon Duane Nolting, Richard Bull, Linda Bull, EAN Holdings Corp./ Enterprise Rental, and all persons or entities who may claim an interest in the defendant property in the above-entitled action. Motion for Entry of Clerk's Default, ECF No. 14.

On August 25, 2021, the Clerk of the Court entered a Default against the $59,000 in United States Currency, Devon Duane Nolting, Richard Bull, Linda Bull, EAN Holdings Corp./ Enterprise Rental, and all persons or entities who may claim an interest in the defendant property in the above-entitled action. Entry of Clerk's Default, ECF No. 15.

Devon Duane Nolting is not in the military service within the purview of the Servicemembers Civil Relief Act of 2003. Exhibit 1.

Richard Bull is not in the military service within the purview of the Servicemembers Civil Relief Act of 2003. Exhibit 2.

Linda Bull is not in the military service within the purview of the Servicemembers Civil Relief Act of 2003. Exhibit 3.

Ian Hunter Anderson is neither a minor nor an incompetent person.

Devon Duane Nolting is neither a minor nor an incompetent person.

Richard Bull is neither a minor nor an incompetent person.

Linda Bull is neither a minor nor an incompetent person.

### III. THE REQUIREMENTS FOR DEFAULT WERE MET.

#### A. Legal Standard

Civil forfeiture cases have five requirements that must be fulfilled to complete a default: (1) the judgment sought does not differ in kind from, or exceed in amount, what is

demanded in the pleadings pursuant to Fed. R. Civ. P. 54(c); (2) the Clerk of the Court has entered default for a sum certain pursuant to Fed. R. Civ. P. 55(b)(1); (3) publication and personal service were completed pursuant to Fed. R. Civ. P. Supp. Rule G(4); (4) the Complaint is legally sufficient to support a reasonable belief that the government will be able to meet its burden of proof pursuant to Fed. R. Civ. P. Supp. Rule G(2), *Alan Neuman Prods., Inc. v. Albright,* 862 F.2d 1388, 1392 (9th Cir. 1988); and (5) no person has filed a claim, or the claim(s) have been resolved under 18 U.S.C. § 983(a)(4)(A) or Supp. R. G(5).

Civil cases that do not directly address forfeiture have seven factors that the Court must consider before entry of default: (1) the substantive merit of the plaintiff's claims; (2) the sufficiency of the complaint; (3) the amount of money at stake; (4) the possibility of prejudice to the plaintiff if relief is denied; (5) the possibility of disputes to any material facts in the case; (6) whether default resulted from excusable neglect; and (7) the public policy favoring resolution of cases on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986); *SATA GmbH & Co. KG v. USA Italco Int'l Ltd.*, No. 3:18-CV-00351-MMD-WGC, 2019 WL 4601513, at *3 (D. Nev. Sept. 20, 2019); *Covenant Care California, LLC v. Shirk*, No. 217CV00956JADVCF, 2018 WL 3429669, at *1 (D. Nev. July 16, 2018).

For purposes of a default judgment, the well-pled allegations of a complaint are taken as true. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 918 (9th Cir. 1987). Furthermore, upon default, the defendant's liability is conclusively established and the factual allegations in the complaint, except those relating to damages, are accepted as true. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). The power to grant or deny relief upon an application for default judgment is within the discretion of the Court. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

**B.   The Forfeiture Requirements for Default Were Met.**

a. <u>Judgment Sought</u>

Pursuant to Fed. R. Civ. P. 54(c) and 55(b), the judgment by default does not "differ in kind from, or exceed [the] amount" of relief listed in the Complaint for forfeiture.

/ / /

####   b. Default and Entry of Default

As shown above, the United States requested entry of Clerk's Default against the $59,000 in United States Currency, Devon Duane Nolting, Richard Bull, Linda Bull, EAN Holdings Corp./ Enterprise Rental, and all persons or entities who may claim an interest in the defendant property in the above-entitled action. ECF No. 14. The Clerk entered the Default as requested. ECF No. 15.

####   c. Notice

Pursuant to Fed. R. Civ. P. Supp. Rule G(4)(a)(iv)(C), the United States published notice via the official internet government forfeiture site, www.forfeiture.gov, for thirty consecutive days. ECF No. 6. Pursuant to Fed. R. Civ. P. Supp. Rule G(4)(b), the United States served the Complaint, the Order for Summons and Warrant of Arrest in Rem for the Property and Notice, the Summons and Warrant of Arrest in Rem for the Property, and the Notice of Complaint for Forfeiture and Arrest on all known potential claimants. ECF No. 13.

####   d. Legal Sufficiency of the Complaint

The Complaint filed in this action was verified. The Court has subject matter jurisdiction, in rem jurisdiction over the defendant property, and venue. The Complaint described the property with reasonable particularity. The Complaint stated where the seizure of the defendant property occurred and its current location. The Complaint identified the statute under which the forfeiture action has been brought. The Complaint alleged sufficiently detailed facts to support a reasonable belief that the United States would be able to meet its burden of proof at trial. Supp. R. G(2); ECF No. 1.

####   e. Status of Potential Claimants

Ian Hunter Anderson has entered into a Settlement Agreement with the United States. Order Granting Settlement Agreement, ECF No. 12.

No person or entity has filed a claim, and the time to file a claim has passed.

/ / /

/ / /

**C.     The Civil Requirements for Default Were Met.**

        a.   <u>The Plaintiff Would be Prejudiced Without a Judgment</u>

The government would be prejudiced if it were to try this case rather than obtain a default judgment, since a trial would require the additional expenditure of human and financial resources. These expenses and efforts are unnecessary because the Complaint established sufficient evidence of the status and forfeitability of the defendant property, and that evidence is uncontested by Devon Duane Nolting, Richard Bull, Linda Bull, and EAN Holdings Corp./ Enterprise Rental. *See United States v. $150,990.00 in U.S. Currency*, No. 2-12-CV-01014-JAD, 2014 WL 6065815, at *2 (D. Nev. Nov. 10, 2014) (brackets added), ("[T]he government would be prejudiced by having to expend additional resources litigating an action that appears to be uncontested. This factor favors default judgment.").

        b. & c.  <u>The Plaintiff's Claims are Meritorious and the Complaint is Sufficient.</u>

As shown in the statement of the case above, the government has a bona fide case against the defendant property and the Complaint sufficiently alleges the facts of the case.

        d.   <u>The Amount of Money at Stake</u>

The value of the defendant property was clearly established in the Complaint, ECF No. 1, and the defendant property is forfeitable pursuant to 21 U.S.C. § 881(a)(6).

> Under the fourth *Eitel* factor, the court considers the amount of money at stake in relation to the seriousness of Defendants' conduct. Plaintiff has provided evidence that the currency, a sum of $24,000, was furnished or intended to be furnished in exchange for marijuana, a serious violation of federal law.
>
> *United States v. Twenty-Four Thousand Dollars ($24,000) in U.S. Currency*, No. 02:09-CV-2319-LRH, 2010 WL 2695637, at *3 (D. Nev. July 2, 2010) (quotation marks and citation omitted).

The Complaint alleges the serious crime of exchanging or intending to exchange moneys, negotiable instruments, securities, or other things of value for a controlled substance or listed chemical in violation of Subchapter I of the Controlled Substances Act, 21 U.S.C. § 801, *et seq*. The money at stake is the tainted currency related to a completed or

/ / /

contemplated illegal-drugs transaction in violation of Subchapter I of the Controlled Substances Act, 21 U.S.C. § 801, *et seq.,* and proceeds traceable to the violations.

          e. <u>There Are No Possible Disputes of Material Fact</u>

No issues of material fact exist, and the allegations of the Complaint are established as a matter of law. The property is subject to forfeiture because law enforcement can demonstrate that the defendant property:

    a. is all moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished in exchange for a controlled substance or listed chemical in violation of Subchapter I of the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, and is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6);

    b. is all proceeds traceable to an exchange for a controlled substance or listed chemical in violation of Subchapter I of the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, and is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6);

    c. is all moneys, negotiable instruments, and securities used or intended to be used to facilitate violations of Subchapter I of the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, and is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6); and

    d. is any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of any offense constituting "specified unlawful activity," here Subchapter I of the Controlled Substances Act, 21 U.S.C. § 801, *et seq.* (incorporated through 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1)(D)), or a conspiracy to commit such offense, and is subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C).

/ / /

/ / /

### f. Default Was Not the Result of Excusable Neglect

The record shows that the claimant and potential claimants were properly served with the Complaint, Order, Summons and Warrant, and the Notice. Devon Duane Nolting, Richard Bull, Linda Bull, and EAN Holdings Corp./ Enterprise Rental failed to file a claim and an answer to the Complaint. Anderson filed a Judicial Claim, ECF No. 7, and an Answer to the Complaint, ECF No. 9. Anderson entered into a Settlement Agreement, ECF No. 11, and this Court granted the Settlement Agreement, ECF No. 12. There is no evidence of excusable neglect.

### g. Public Policy Does not Prevent Default Judgment

Under Fed. R. Civ. P. 55(b), default judgments are allowed. Here, the claimant and potential claimants did not file a claim and an answer to the government's Complaint.

> While the Federal Rules do favor decisions on the merits, they also frequently permit termination of cases before the court reaches the merits. As F.R.C.P. 55 indicates, one such instance is when a party fails to defend against an action, which is exactly what [claimant(s)] failed to do in this case. Thus, the preference to decide cases on the merits does not preclude a court from granting default judgment.
>
> *Kloepping v. Fireman's Fund*, No. C 94-2684 TEH, 1996 WL 75314, at *3 (N.D. Cal. Feb. 13, 1996).

Denying the government's Motion would not further public policy. While cases should be decided on the merits when possible, the claimant and potential claimants have not contested the facts of the Complaint or the forfeiture of the defendant property, which makes a decision on the merits impractical. Therefore, a final default judgment of forfeiture is appropriate. *See Covenant Care California*, 2018 WL 3429669, at *2.

## IV. JUDGMENT

Based on the foregoing this Court finds that the United States has shown its entitlement to a Default Judgment of Forfeiture as to Devon Duane Nolting, Richard Bull, Linda Bull, EAN Holdings Corp./ Enterprise Rental, and all persons or entities who may claim an interest in the defendant property and Final Judgment of Forfeiture as to the $59,000 in United States Currency and Ian Hunter Anderson.

/ / /

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Default Judgment of Forfeiture is entered against Devon Duane Nolting, Richard Bull, Linda Bull, EAN Holdings Corp./ Enterprise Rental, and all persons or entities who may claim an interest in the defendant property in the above-entitled action.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Final Judgment of Forfeiture is entered against the $59,000 in United States Currency and Ian Hunter Anderson.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the defendant property be, and the same is hereby forfeited to the United States of America, and no possessory rights, ownership rights, and no rights, titles, or interests in the property shall exist in any other party.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED, that Ian Hunter Anderson forfeited all possessory rights, ownership rights, and all rights, titles, or interests in the property to the United States.

IT IS HEREBY CERTIFIED, pursuant to 28 U.S.C. § 2465(a)(2), that there was reasonable cause for the seizure or arrest of the defendant property.

/s/ Lia Griffin, for
DEBRA K. KEMPI
CLERK OF COURT

DATED: 09/22/2021